IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

UNITED STATES OF AMERICA for the
Use and benefit of READY MIX USA, LLC
d/b/a BLOCK USA GULF COAST DIVISION                                      PLAINTIFF

v.                                                CIVIL ACTION NO.: 1:12-CV-144-SA-DAS

ONE STOP ENVIRONMENTAL, LLC;
SIMPSON PLASTERING, LLC; and
AMERICAN SAFETY CASUALTY
INSURANCE COMPANY                                                        DEFENDANTS

and

NETTLETON CONCRETE, INC                              THIRD-PARTY DEFENDANT

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Third-Party Defendant Nettleton Concrete Inc.'s  Motion to

Dismiss [37] brought under Federal Rule of Civil Procedure 12(b)(3).  For the reasons set forth

below, the Court denies that motion.

## FACTUAL BACKGROUND

Block USA commenced the present action to recover approximately $130,000.00 for

building material and supplies sold to Simpson Plaster, LLC and One Stop Environmental, LLC

for incorporation in a United States Department of Agriculture project.  One Stop, the general

contractor, subsequently filed a counterclaim against Block, alleging that Block's delay in

delivering said materials subsequently caused One Stop to be delayed in ultimately completing

the project and One Stop thereby suffered lost profits.  According to Block, One Stop has

indicated that, in particular, delays in the manufacturing of ground face concrete blocks are at the root of One Stop's claim. Block thereafter filed a Third-Party Complaint against its ground face concrete block supplier, Nettleton Concrete, Inc. It is that claim in particular that gives rise to the immediate controversy.

Nettleton has filed the present motion to dismiss for improper venue, alleging that a forum-selection clause governs the contract entered into by the parties. Specifically, Nettleton cites a clause providing, "All litigation of any debt or issues between the parties shall be in the courts of the Western District of Craighead County at Jonesboro, Arkansas." Block concedes that the forum-selection clause would govern if it had been included in the contract, but instead argues that the contract entered into by the parties contained no such agreement. The Court now considers the merits of those positions.

## STANDARD OF LAW

Under the law of this Circuit, a motion to dismiss based on a forum-selection clause may be properly raised under the procedural mechanism of Federal Rule of Civil Procedure 12(b)(3). See Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 901-02 (5th Cir. 2005) ("Because our court has accepted Rule 12(b)(3) as a proper method for seeking dismissal based on a forum selection clause, we need not decide whether a Rule 12(b)(1) motion would be appropriate."). As such, the court must "view all facts in a light most favorable to the plaintiff." Noble Drilling Services, Inc., v. Certex USA, Inc., 620 F.3d 469, 473 (5th Cir. 2010). In a diversity action, federal law determines the enforceability of a forum-selection clause. Haynsworth v. Corp., 121 F.3d 956, 962 (5th Cir. 1997). And, if a mandatory forum-selection clause indeed applies, it is enforceable unless the non-movant can show it was unreasonable. Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 299 (5th Cir. 2004). In the case at hand, however, Plaintiff concedes

that the forum-selection clause would apply were it a part of the agreement, but instead argues that such a clause was not a part of the contract entered into by the parties.

Questions regarding the existence of a contract are instead state-law questions.  Graves v. BP America, Inc., 568 F.3d 221, 222 (5th Cir. 2009)  (establishing that in determining whether a contract is formed, state-law principles govern).  Thus, this Court need first determine whether it can even be considered a term of the contract entered into by the parties.  See id. (premising subsequent reasonability analysis on an initial determination that clause applied); Chateau Des Charmes Wines v. Sabate USA, Inc., 328 F.3d 528, 531 (9th Cir. 2003) (considering whether forum selection clause was even a part of the contract before determining validity); Valero Marketing and Supply Co. v. Gen. Energy Corp., 702 F. Supp. 2d 706, 714 (S.D. Tex. 2010) (applying general rules of contract law to determine whether forum selection clause was part of subject contract); Zamora Entertainment, Inc., v. William Morris Endeavor Entertainments, LLC, 667 F. Supp. 1032, 1036 (S.D. Iowa 2009)  (asking whether contract contained forum-selection clause before gauging validity).  The Court therefore first looks to the contours of state law to determine whether the parties entered into a contract containing a forum-selection clause.  See Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996)  (looking first to state-law contract formation principles to determine whether there is a valid agreement to arbitrate).

## DISCUSSION

There is no dispute that the UCC governs the current dispute between the parties as it involved the sale of concrete block, considered a sale of goods under the UCC.  Additionally, the parties do not dispute whether a valid contract existed, but instead disagree as to when that

contract was formed and what terms it subsequently included.[1]  The existence of a contract is a question of fact that is to be determined by a jury, or a trial judge when a trial is conducted without a jury.  Mauldin Co. v. Lee Tractor Co. of Miss., Inc., 920 So.2d 513, 514 (Miss. Ct. App. 2006).

A valid contract requires an offer and an acceptance, Anderton v. Business Aircraft, Inc., 650 So. 2d 473, 476 (Miss. 1995), and further, it is an "elementary concept of contract law that mutual intent is a necessary component of any contract."  Yazoo Mfg. v. Lowe's Companies, Inc., 976 F. Supp. 430, 435 (S.D. Miss. 1997)  (citing Smith v. Smith, 656 So.2d 1143, 1147 (Miss. 1995)).  Nonetheless, under Mississippi Code § 75-2-204(1), a contract for the sale of goods may be formed in any manner sufficient to show the existence of a contract.  "[A]n offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable under the circumstances.  See Miss. Code § 75-2-206(1)(a).  Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of the agreement may be explained or supplemented by a course of dealing.  See Miss. Code § 75-2-202.  A course of dealing is defined as a sequence of conduct "concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."  Miss. Code § 75-1-303.

In the case at hand, Nettleton's motion to dismiss simply assumes, without arguing, that the forum-selection clause was a part of the contract entered into by the parties.  Specifically,

---

[1] Plaintiff acknowledges that there is a potential choice of law issue regarding whether the laws of Mississippi or Arkansas rightfully apply regarding contract formation.  Nonetheless, Plaintiff represents, and this Court agrees, that there is not a significant difference between the two states in regard to the applicable issues, and such analysis is not immediately required.  Hartford Underwriters Ins. Co. v. Foundation Health Services Inc., 524 F.3d 588, 592 (5th Cir. 2008) (finding choice of law analysis necessary because Mississippi law provided viable cause of action, but Louisiana law did not)  (citing Zurich Am. Ins. Co. v. Goodwin, 920 So.2d 427, 432 (Miss. 2006).

Nettleton argues that under a "course of dealings" Block and Nettleton "entered into a series of purchases, [as] reflected" by an attached self-declared invoice. The first page of each invoice indeed contains a forum-selection clause, stating, "The venue for litigation of any debt or issue between the parties shall be in the courts of the Western District of Craighead County at Jonesboro, Arkansas." Additionally, Nettleton has shown that on the back of the invoice is an additional term of sale stipulating that "[a]ll litigation of any debt or issues between the parties shall be in the courts of the Western District of Craighead County at Jonesboro, Arkansas." Assuming that clause was part of the contract, Nettleton's argument and authorities were aimed solely at the validity of such clauses when agreed to by the parties.

In response, however, Block countered by asserting that the forum selection clause was never part of the contract between the parties. According to Block, Nettleton has produced no evidence establishing that the parties agreed to or addressed the issue of a forum-selection clause in the course of entering into an agreement. Block contends that the account manager in charge of obtaining concrete block for the USDA project was Sam Steen. Block avers that several weeks before Nettleton began manufacturing the subject concrete block, Block sent an order to Brian Woods at Nettleton. According to Block, Nettleton then sent the order back to Block with several requests for clarification. At the same time, Woods also submitted an architectural order checklist. That checklist provided that "[p]roduction will be scheduled after receipt of this completed document." Thus, according to Plaintiff, Block's offer was accepted when Nettleton began producing the order and it was not until after a contract had been formed that Nettleton sent any form conveying that the forum-selection clause was part of the agreement. Additionally, Block asserts that the forum selection clause should be deemed a material term

under of the Uniform Commercial Code, and should therefore not automatically be added as a term to the contract under §2-207.[2]

Block vehemently argues that it was not informed of the forum-selection clause at the time of contracting. Based on the affidavit of Steen, Block asserts that the invoices sent following the order were conveyed via email, and although the attached document indicated terms and conditions were included on the reverse, the reverse side of that page was not included with the attachment. Additionally, Block contends that the email "order" sent by Block on January 5, 2011, was not prepared as an acceptance of Nettleton's "quotation," but was instead an offer. Finally, Block also argues that the "quotation" sheets bearing a signature in the acceptance blank were not signed by agents of Block.

Nettleton, in rebuttal, has offered an affidavit of Brandon Winters, Nettleton's vice president and hundreds of pages of purportedly probative documents. Among those documents submitted were various "quotations," "invoices," "bills of lading," and a "credit application." Nettleton now argues that before commencing any business relationship with Plaintiff, Nettleton required Block to submit to a credit application that thereafter formed the basis of the entire financial relationship between the two parties. Additionally, through the affidavit of Winters, Nettleton avers that over the course of a multi-year relationship, Block had purchased concrete block from Nettleton on twenty or more occasions and upon each transaction Nettleton was required to submit a "quotation" to Block, which designated both the quantity and price of each block to be manufactured. Moreover, Nettleton argues that it never commences the manufacturing of a special order until the customer has reviewed the "quotation" and ordered

---

[2] Although Plaintiff has presented extensive argument as to why the clause would not have become part of the parties agreement under the UCC's §2-207 "Battle of the Forms" provision based on its materiality, Defendant has presented no argument as to that issue and the Court need not consider it.

pursuant to the contract. According to Nettleton, Steen's email from Block on January 5, 2011 constituted an "acceptance" of Nettleton's "quotation" for the disputed job. Thus, according to Nettleton, the quotation constituted the offer at issue and it specifically included the forum-selection clause.

Viewing the facts in a light most favorable to Block, this Court is unable to say that the contract formed between the parties included the forum-selection clause. Although Nettleton contends that they never commenced an order before issuing a quotation to a client and then receiving the client's acceptance pursuant to the terms stated therein, Nettleton has submitted no evidence that is probative of that assertion. Nettleton has submitted a large volume of "quotations" that might very well constitute offers. However, those quotations have a signature line that indicates, "[b]y signing, I/We understand and accept all notices, warning, terms and conditions and products." None of these is signed by an agent of Block, nor has Nettleton submitted any evidence of a direct response from Block regarding a proposed "quotation."

Whatever the course of dealings between the parties, it clearly did not involve Nettleton submitting a proposed quotation and requiring Block to sign and return the form in order to accept it. The current facts before the Court are simply to convoluted to determine that the parties' course of dealings was uniform in regard to the exchange of forms. See New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.2d 24, 19, 20 (2d Cir. 1996) (noting that a well-established custom of sending an arbitration clause may bind an opposing party, but cautioning that such a understanding is clearly a question of fact); see also Pervel Industr., Inc. v. TM Wallcovering, Inc., 871 F.2d 7, 8 (2d Cir. 1989) (requiring at least a number of confirmation forms to be signed before finding them binding and also finding special significance in the prevalence of such standard terms within the context of the textile industry).

7

Additionally, outside of Nettleton's conclusory averment, Nettleton has not provided any documentation that these "quotations" were regularly and uniformly sent to Block as offers. Moreover, Nettleton has not submitted any other alleged "acceptances" from Block, except that of the January 5 email correspondence. Based on the evidence presented, the Court can say with no certainty that there was such a definite and particular course of dealings between the parties. See also One Beacon Ins. Co. v. Crowley Marine Services, Inc., 648 F.3d 258, 267 (5th Cir. 2011) (reciting that "an inference of the parties' common knowledge or understanding that is based upon a course of dealing is [a] question of fact.") (quoting New Moon Shipping Co., Ltd., 121 F.3d at 30).

Additionally, although Nettleton contends that Block's January 5, 2010 correspondence constituted an acceptance, this is less than clear based on the facts before the Court. That correspondence states, "Brian, Here you go! Color: Cranbury." It then includes a list of the desired quantity of each product. Steen then immediately added an addendum to that email, this time stating, "Oh by the way give me pricing, please!" Woods then replied with "10-4" and apparently also sent an architectural checklist form and annotated Block's list of the desired product with questions such as, "need drawing" and "what is this?."

In regard to the invoices, although the form indicates that terms and conditions are included on the reverse, Block has averred that the terms and conditions were not included because the practice of Nettleton was to send those invoices by email. Nettleton has made no showing that those terms and conditions were actually ever mailed. Additionally, although some facts indicate that Nettleton may have sent the "quotation" as a delivery receipt, the uncorroborated evidence shows that Block never signed such a quotation and Nettleton has not

8

clearly established that they were actually included in such a fashion. These facts are insufficient to support a factual finding necessary to bind Block.

Finally, although Nettleton contends that the credit application governed the entire financial relationship between the parties, the text of that application tells another story.[3] Although the form indeed states that, "[a]s part of the consideration of the granting of credit, the undersigned agree(s) that the appropriate venue for litigation of any debt or issue between the parties shall be in the courts of the Western District of Craighead County at Jonesboro, Arkansas," the credit application proffered by Nettleton was apparently completed and processed in July of 2008. Nettleton contends that the credit application was "renewed" for the present job, but has provided no evidence of such. The text of the application does not indicate that it would govern all future contracts entered into by the parties, but instead appears to be much more specific.

For instance, the form requires the applicant to fill in the blanks for such inquiries as: with whom the construction loan was obtained, who the relevant bonding company is, the name of the job, and the property owner of the job. In other words, the credit application is "job" specific. It is uncontroverted that the relevant credit application was not completed as part of the disputed job, but was rather completed much earlier in the parties' relationship. In fact, even Nettleton states that Block has purchased material from Nettleton for twenty or more "jobs." Thus, the Court is unable to determine that the contract entered into by the parties for a particular job in 2008 necessarily governed the parties in regard to the disputed transaction.

---

[3] The court generally refuses to consider arguments raised for the first time in rebuttal on the basis that the non-movant is deprived of the opportunity to adequately respond. Stuckey v. Miss. Transp. Comm'n, 2009 WL 230032, *2 (S.D. Miss. Jan. 29, 2009); see also McDaniel v. Miss. Baptist Med. Ctr., 869 F. Supp. 445, 453 (S.D. Miss. 1994) ("In the interest of fairness, Defendant should not be allowed to raise new grounds for the first time in its rebuttal to which Plaintiff will not have the opportunity to provide an adequate response."). The Court finds the newly proffered evidence here unavailing regardless, however.

<u>CONCLUSION</u>

Viewing the facts before the Court in a light most favorable to the Plaintiff, the Court simply cannot conclude that the contract entered into by the parties included the disputed forum selection clause. The Court notes, however, that this is not a ruling on the merits. The Court does not hold that the contract between the parties did not contain or forum-selection clause or any of the other terms and conditions that may be cited by Defendant. Instead, the Court simply holds that it cannot find as a matter of law, that the contract did contain such terms. Nettleton's Motion to Dismiss [37] is therefore denied.


SO ORDERED, this the 27th day of March, 2013.


**/s/ Sharion Aycock**_____
**U.S. DISTRICT JUDGE**